# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
February 2, 2021
Lyle W. Cayce
Clerk

No. 20-40302

SONYA E. BYERLY, INDEPENDENT EXECUTOR OF THE ESTATE OF
GREGORY G. BYERLY,

*Plaintiff—Appellant*,

*versus*

STANDARD INSURANCE COMPANY,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:18-CV-592

Before JOLLY, SOUTHWICK, and COSTA, *Circuit Judges*.

PER CURIAM:[*]

  Gregory Byerly stubbed his toe in a household accident. Due to several preexisting medical conditions—diabetes, peripheral neuropathy, and peripheral arterial disease—the injury eventually required a below-the-knee amputation of his leg. He filed a claim under his employer-sponsored

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

Case 4:18-cv-00392-ALM Document 55-7 Filed 02/24/21 Page 2 of 12 PageID #: 1201
Case: 20-40302 Document: 00515755070 Page: 2 Date Filed: 02/24/2021

No. 20-40302

accidental death and dismemberment (AD&D) plan. The plan administrator rejected the claim on the ground it was not just the stubbing of his toe, but also his preexisting conditions, that resulted in the need for an amputation. Byerly's wife then brought this ERISA suit on behalf of his estate (Byerly passed away for reasons unrelated to the amputation). Concluding that there was no qualifying "loss" even under *de novo* review of the claim, we AFFIRM.

I.

Byerly worked in Texas for Fidelity National Information Services, Inc. when he stubbed his toe. Fidelity provided its employees an AD&D Group Policy issued by Standard Insurance Company.

> The Policy provides benefits under the following conditions:
>
> If you have an accident, including accidental exposure to adverse conditions, while insured for AD&D Insurance, and the accident results in a Loss, we will pay benefits according to the terms of the Group Policy after we receive Proof Of Loss satisfactory to us.

The Policy covers the loss of a foot, so long as the loss meets all the following requirements:

> 1. Is caused solely and directly by an accident.
>
> 2. Occurs independently of all other causes.
>
> 3. With respect to Loss of life, is evidenced by a certified copy of the death certificate.
>
> 4. With respect to all other Losses, occurs within 365 days after the accident and is certified by a Physician in the appropriate specialty as determined by us.

The Policy then excludes certain accidental losses. AD&D benefits are not payable "if the accident or loss is caused or contributed to by . . . [s]ickness . . . existing at the time of the accident" and sickness is defined as "your sickness, illness, or disease."

Doctors who treated Byerly after he stubbed his toe noted the contribution of his preexisting conditions to the pain in his toe. The doctor Byerly visited three days after the accident diagnosed him with a toe wound with secondary cellulitis and uncontrolled Type 1 diabetes mellitus with peripheral neuropathy. A podiatrist diagnosed Byerly with a "diabetic foot ulcer associated with diabetes mellitus due to underlying condition, with necrosis of bone." The surgeon who amputated the leg recorded that Byerly "recently was admitted with a nonhealing left heel decubitus related to his neuropathy and peripheral arterial disease."

The doctors whom Standard asked to review the case reached similar conclusions. Dr. Bergstrom concluded that "the development of infection and gangrene was related to his current medical conditions (diabetes, peripheral neuropathy, and [peripheral artery disease]), and likely would not have occurred in the absence of those conditions." Dr. Fancher, who looked at the case after Byerly appealed the initial claim denial, found that Byerly did "not require an amputation due to trauma alone," concluding it "could have only happen[ed] if he had severe underlying vascular disease, which clearly was the case here." In his opinion, Byerly's "nonhealing ulcer, with gangrene, and his need for amputation was directly related to his diabetes and to his severe peripheral vascular disease." Out of the hundreds of patients Dr. Fancher has seen for foot injuries, he had "never encountered an otherwise health[y] patient who required an amputated leg, from a simple 'stubbed toe,' or from any other minor foot injury or laceration." But, he noted, "[t]he sequence of events that happened [to Byerly] is extraordinarily common . . . in diabetics with vascular disease."

Based on these opinions, Standard denied Byerly's claim. It found that the amputation was caused, at least in part, by his diabetes and peripheral vascular disease. As a result, his loss "did not fall within the Group Policy's insuring clause" because it "was not caused solely and directly by an accident, independently of all other causes." It also found that the exclusion applied because Byerly's sickness contributed to the loss.

This lawsuit followed. The district court issued a 46-page ruling granting summary judgment to Standard. It spent much of its analysis

discussing what standard of review applied. Although it ultimately decided that deference was owed to the plan administrator's determination, it also held that it would affirm the denial of benefits even under *de novo* review.

## II.

As we are reviewing this case at the summary judgment stage, we owe no deference to the district court's view of the case. *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010). But the parties disagree about the underlying standard of review when a federal court reviews the decision of an ERISA plan administrator.

The Policy grants discretion to the administrator: "Except for those functions which the Group Policy specifically reserves to the Policyholder, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy." Ordinarily, that would mean we review only for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Plaintiff argues, however, there are two reasons why that deference is not warranted. First, she contends that the law of Texas, where her husband lived when he worked for Fidelity, applies rather than the law of Florida, where Fidelity was based. That choice-of-law question might affect the standard of review because Texas bans delegation clauses in insurance policies, whereas Florida does not. *See* TEX. INS. CODE § 1701.062(a); Nat'l Ass'n of Ins. Comm'rs, *Prohibition on the Use of Discretionary Clauses Model Act* ST-42-3–6 (2020), https://content.naic.org/sites/default/files/inline-files/MDL-042.pdf (not listing Florida among the 26 states that ban delegation clauses); *see also Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 256–57 (5th Cir. 2018) (en banc) (holding that *de novo* review applies when a state law validly bars delegation clauses). Even if the Texas antidelegation statute does not apply, Plaintiff argues that our deference to a plan's discretion is lessened because of the conflict of interest when, as here,

the plan administrator also pays the benefits.[1] *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–17 (2008).

But we need not wade into those issues. Even assuming *arguendo* that the best possible standard for the Plaintiff—*de novo* review—applies, we would not disagree with the claim denial. *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 558–59 (5th Cir. 2011) (providing that a choice of law analysis is unnecessary when the application of two bodies of law leads to the same result).

On the merits, Plaintiff does not dispute that Byerly's comorbidities substantially contributed to his amputation. Indeed, three separate doctors, including Byerly's own treating provider, stated that the gangrene and osteomyelitis that led to the amputation would not have happened but for his diabetes, peripheral neuropathy, and peripheral arterial disease. That would seem to settle the issue: Byerly's "loss" was not caused "solely and directly by an accident" nor did it "occur independently of all other causes." Byerly's underlying medical conditions, not just the accident (stubbing the toe), contributed to the amputation.[2]

Although she does not dispute the consensus medical view that Byerly's preexisting conditions contributed to the need for an amputation, Plaintiff argues that looking at what caused the amputation is asking the wrong question. She contends that the focus instead should be on what caused the "initial injury" to the toe. That would help her because the preexisting conditions did not cause Byerly to stub his toe; stubbing the toe was an accident. The problem for Plaintiff is that the Policy places the focus

---

[1] This conflict-of-interest claim may be forfeited because it was not raised below. *See, e.g.*, *Caples v. U.S. Foodservice, Inc.*, 444 F. App'x 49, 54 n.4 (5th Cir. 2011) (declining to consider an administrator conflict-of-interest argument because it was not presented to the district court).

[2] For the same reason, the "sickness" exclusion also likely applies, but we need not get to that exclusion as we find no coverage in the first place.

No. 20-40302

not on the cause of the accident or initial injury but on the cause of the "loss." The loss is the amputation, so the amputation must be "caused solely and directly by an accident" and must "[o]ccur[] independently of all other causes." Because neither of those two conditions are met here, the Policy does not provide coverage.

* * *

We AFFIRM the judgment of the district court.